UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **IN RE IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH SIX ACCOUNTS STORED AT PREMISES CONTROLLED BY ONE PROVIDER PURSUANT TO 18 U.S.C. 2703 FOR INVESTIGATION OF VIOLATIONS OF 18 U.S.C. 951** | **26-mc-98 (JEB)** |

**GOVERNMENT'S BRIEF JUSTIFYING REMAINING REDACTIONS**

The United States of America, by and through the undersigned counsel, respectfully provides the Court with the following additional justifications for the remaining redactions that it is proposing to Documents 1, 2, and 3 on docket 24-sc-2315.[1] As stated in the Joint Status Report, filed September 4, 2026 [Doc. 13], the government does not propose any redactions to Document 4.

**The Names of the FBI Case Agent and AUSA Should Remain Redacted**

One of the primary disputes between the parties is whether or not the names of the FBI case agent and the Assistant United States Attorney (AUSA) who obtained the search warrant and nondisclosure order should be unsealed. *See* Petitioners' Status Report [Doc. 14] at 3-4. Petitioners cite no case law in support of their request. *See id.* Instead, they baldly assert, "The identities of the affiant and the Government attorney who presented the warrant application are

[1] On the docket, Document 1 (Application for Search Warrant and accompanying materials) and Document 3 (signed Search Warrant and accompanying materials) are both 36-page packages of materials that are identical, except that Document 3 contains the signature of the Magistrate Judge. For purposes of unsealing, the Government has deleted the final 23 pages from Document 3, which is simply a repeat of the Affidavit in Support of Search Warrant contained in Document 1.

directly relevant to the public's ability to understand and evaluate the judicial process at issue." *Id.* at 4.

To the contrary, the identities of the FBI case agent and assigned AUSA who obtained the legal process in this case would not shed any light on the institutional decisions made by the FBI and the Department of Justice to obtain the legal process at issue. In the current environment, however, they would most certainly expose those individuals to significantly increased risks of harassment, intimidation, and threats. This Court, the FBI, and the Department of Justice have seen numerous recent examples of public servants being harassed and threatened for carrying out their job duties.[2]

***Courts have recognized the need to redact law enforcement and prosecutor names to protect their privacy and safety.***

As the Fourth Circuit observed decades ago:

> One who serves his state or nation as a career public servant is not thereby stripped of every vestige of personal privacy, even with respect to the discharge of his official duties. Public identification of any of these individuals could conceivably subject them to harassment and annoyance in the conduct of their official duties and in their private lives.

*Nix v. United States*, 572 F.2d 998, 1006 (4th Cir. 1978). In the Freedom of Information Act (FOIA) context, it is well-recognized by the courts that federal employees involved in law enforcement, particularly those in non-senior positions, possess, by virtue of the nature of their

---

[2] *See, e.g.,* Natalie Alms, *Threats against public servants increased over 35 times what they were a decade ago, according to new research*, NEXTGOV/FCW (Nov. 4, 2025) https://www.nextgov.com/people/2025/11/threats-against-public-servants-increased-over-35-times-what-they-were-decade-ago-according-new-research/409296/; *Threats against public officials surged in 2025*, CBS NEWS (Feb. 19, 2026) https://www.cbsnews.com/video/threats-against-public-officials-surged-2025/.

work, substantial privacy interests in their identities, contact information, and work addresses.[3] For law enforcement personnel in particular, these privacy interests are generally protected under FOIA.[4] In addition, courts have held that the identities of investigators are properly withheld as a

---

[3] *See Pronin v. BOP*, No. 20-5077, 2021 WL 6102460, at *1 (D.C. Cir. Dec. 21, 2021) (per curiam) ("[T]he district court correctly concluded that the agency properly relied on Exemption 6 . . . to withhold lists of staff at three [Bureau of Prisons] facilities."); *Baker v. FBI*, 863 F.3d 682, 684 (7th Cir. 2017) (protecting names of FBI agents involved in criminal investigation); *Solers, Inc. v. IRS*, 827 F.3d 323, 332-33 (4th Cir. 2016) (holding that IRS employees and other government employees have substantial privacy interests in withholding their names in connection with particular investigations due to potential for harassment or embarrassment); *Wood v. FBI*, 432 F.3d 78, 87-89 (2d Cir. 2005) (protecting investigative personnel of FBI's Office of Professional Responsibility); *New England Apple Council v. Donovan*, 725 F.2d 139, 142-44 (1st Cir. 1984) (protecting identities of nonsupervisory Inspector General investigators who participated in grand jury investigation of requester); *Moore v. CIA*, No. 20-1027, 2022 WL 2983419, at *10-11 (D.D.C. July 28, 2022) (protecting names and contact information of working-level CIA personnel); *Reps. Comm. for Freedom of the Press v. CBP*, 567 F. Supp. 3d 97, 125 (D.D.C. 2021) (determining that agency, which disclosed names of DHS and CBP senior leadership, properly withheld names and contact information of almost all other non-public facing employees); *Hawkinson v. ICE*, 554 F. Supp. 3d 253, 274 (D. Mass. 2021) ("Courts have recognized that ICE attorneys have a privacy interest in not having their names and e-mail addresses revealed."); *Smith v. U.S. Dep't of Treasury*, No. 17-1796, 2020 WL 376641, at *4 (D.D.C. Jan. 23, 2020) (upholding redaction of "names of a limited group of non-senior employees: those who work in offices that perform national security and law enforcement functions, IRS employees who are part of a pseudonym program to protect employees' personal safety, and IRS employees who work in 'sensitive' positions (as defined by OPM)") (internal citation omitted); *Lewis v. DOJ*, 867 F. Supp. 2d 1, 21 (D.D.C. 2011) (observing that although "[a] government employee's privacy interest may be diminished by virtue of his government service, . . . he retains an interest nonetheless"); *Banks v. DOJ*, 813 F. Supp. 2d 132, 142 (D.D.C. 2011) (determining that agency properly redacted law enforcement personnel's names and telephone numbers "from a list of newspapers"); *Moore v. Bush*, 601 F. Supp. 2d 6, 14 (D.D.C. 2009) (protecting the name and phone number of an FBI support employee and the name of a Special Agent because release "could subject the Agent and the employee to harassment").

[4] *See Baker*, 863 F.3d at 684-85 (stating district court correctly observed that "disclosing the names of the Chicago officers could expose them to harassment without conferring an offsetting public benefit and would thus be an unwarranted invasion of their personal privacy"); *Hulstein v. DEA*, 671 F.3d 690, 695-96 (8th Cir. 2012) (protecting names and signatures of DEA agents); *Moore v. Obama*, No. 09-5072, 2009 WL 2762827, at *1 (D.C. Cir. Aug. 24, 2009) (per curiam) (protecting names and a phone number of FBI employees); *Fabiano v. McIntyre*, 146 F. App'x 549, 550 (3d Cir. 2005) (per curiam) (affirming withholding of names and telephone numbers of FBI Special Agent, FBI support employees, and non-FBI federal employee); *Miller v. Bell*, 661 F.2d 623, 630 (7th Cir. 1981) (per curiam) ("It is not necessary that harassment rise to the level of endangering physical safety before the protections of 7(C) can be invoked."); *Reps. Comm. for Freedom of the Press v. CBP*, 567 F. Supp. 3d 97, 126 (D.D.C. 2021) (recognizing strong privacy interest for agency employees who have faced vandalism, threats, and social media threats "solely based on their employment with [the agency]"); *Lamb v. Millennium Challenge Corp.*, 334 F. Supp. 3d 204, 216-17 (D.D.C. 2018) (finding that "government investigators and employees 'have a legitimate interest in preserving the secrecy of matters that conceivably could subject them to annoyance or harassment in either their official or private lives'" (quoting *Lesar v. DOJ*, 636 F.2d 472, 487 (D.C. Cir. 1980))); *Rojas-Vega v. USCIS*, 132 F. Supp. 3d 11, 20 (D.D.C. 2015) (finding protection of "phone numbers, email

routine matter under FOIA when they take part in a highly publicized investigation.[5]

***Mr. Caputo's own social media posts have heightened the risks to FBI agents and AUSAs.***

This general risk of harassment and intimidation of FBI agents and AUSAs is heightened here, based on Petitioner Caputo's own social media posts.[6] Mr. Caputo has a history of demonizing and dehumanizing FBI agents. For example, on Jan. 19, 2022, Mr. Caputo posted on X, "I wouldn't cross the street to douse an FBI SSA if he was on fire. No chance." On June 14, 2023, Mr. Caputo posted on X: "Destroy the FBI before they destroy you." On Sept. 13, 2023, Caputo posted on X, "I will never attend social events which include present or former FBI employees. My daughters will never befriend an FBI employee's child. I will leave any PTA meeting, school sports event concert, supermarket, restaurant, party, wedding, or funeral immediately upon discovering an FBI employee is present. Shun all FBI employees in your community or their abuse will never stop. #ShatterandScatter the FBI." On Nov. 14, 2023, Mr.

---

addresses, names, signatures, and initials of . . . INS agents" appropriate), *aff'd*, 650 F. App'x 36, 37 (D.C. Cir. 2016) (per curiam).

5 *See Lahr v. NTSB*, 569 F.3d 964, 977-79 (9th Cir. 2009) (reversing district court and holding that FBI agents have cognizable privacy interest in withholding their names because release of FBI agents' identity would most likely subject agents "to unwanted contact by the media and others, including [plaintiff], who are skeptical of the government's conclusion" in investigation of crash of TWA Flight 800 and noting that "courts have recognized that agents retain an interest in keeping private their involvement in investigations of especially controversial events"); *Wichlacz v. U.S. Dep't of the Interior*, 938 F. Supp. 325, 334 (E.D. Va. 1996) (protecting names of Park Police officers who investigated suicide of former Deputy White House Counsel because disclosure would cause "onslaught of media attention" and could cause camera crews to "besiege" their workplaces and homes), *aff'd* per curiam, 114 F.3d 1178 (4th Cir. 1997) (unpublished table decision); *Stone v. FBI*, 727 F. Supp. 662, 663 n.1 (D.D.C. 1990) (protecting identities of FBI Special Agents who participated in investigation of assassination of Robert F. Kennedy), *aff'd* per curiam, No. 90-5065, 1990 WL 134431 (D.C. Cir. Sept. 14, 1990); *Freedom Watch, Inc. v. Mueller*, 453 F. Supp. 3d 139, 156-58 (D.D.C. 2020) (upholding redactions of names and contact information for Special Counsel's Office personnel and other law enforcement personnel due to sensitive and high-profile nature of records).

6 The Government can make any of the referenced social media posts available to the Court for *in camera* review upon request. It does not intend to give those posts increased circulation by attaching them as exhibits or providing links to them.

Caputo posted on X a series of comments demonizing the FBI: "Not everyone in law enforcement is evil, of course, just everyone at the FBI. My local LE agrees with me. They are ashamed to work with the FBI. The FBI is comprised of demons, and I don't have to show demons any respect." In comments that same day, Mr. Caputo added, "Anything less than shattering the FBI into a million pieces and scattering every one of those pieces in the winds is dumb and destructive. Meanwhile, shun them all. This is the way." In another comment that day he wrote, "If you work at the FBI in any capacity, you are enabling corruption, therefore you are also corrupt. Pretty simple. Shun them all." That same day, Mr. Caputo wrote about refusing to shake the hand of an FBI agent he encountered at a social gathering. In responding to comments on his post, he recognized that some people may disagree with this decision but added, "I simply do not care if I offend fundamentally evil and offensive people. Demons can all go to Hell."

Mr. Caputo's hostile posts include comments about this specific matter. On August 13, 2026, Caputo posted on X about learning in the past about the legal process issued in this case and referred to the FBI agents as "weaponized criminal bureaucrat scum" who "are still hiding like cowards." Mr. Caputo has also launched a social media campaign against a former AUSA who worked in the United States Attorney's Office for the District of Columbia (USAO-DC) National Security Section (NSS), whom Mr. Caputo apparently (and mistakenly) believes obtained the search warrant at issue in this case or had access to the fruits of that search warrant. Mr. Caputo has created a website at lawfaredoj.com to criticize the former NSS AUSA and, without any basis, to claim that the AUSA "previously pursued Michael Caputo as a federal prosecutor at the Department of Justice." On Oct. 6, 2026, a video clip was posted on X of Mr. Caputo being interviewed on a program called "Real America's Voice" in which Mr. Caputo continued his demonization of the former AUSA. In that interview, Mr. Caputo purports to describe where the

former AUSA lives after saying, "Let's name and shame that guy." After asking himself a rhetorical question about what kind of person would do the kinds of things he alleges the former AUSA has done, Mr. Caputo answers his own question: "I call those people demons, really, who prowl around the world seeking the ruin of souls."

On Oct. 7, 2026, Mr. Caputo posted on X additional unsupported claims against the former AUSA, whom he asserted "has privatized his USADC-NSS illegal investigation into my … documentary" and "is now being paid 7 figures … to sue me with DOJ information."[7] Mr. Caputo then shared his thoughts about undersigned counsel: "But I'm confused. DOJ has put Gregg Maisel in charge of negotiating redactions on key documents that reveal the AUSAs who broke the law to pursue my family for 5 years. The man who directed my illegal investigation is in charge of policing his team's illegal actions."

While none of these social media posts by Mr. Caputo have been explicitly threatening to FBI agents or AUSAs, Mr. Caputo frequently authors posts with strong emotional intensity about the FBI demonstrating personalized anger directed at agents; intent to shame, ostracize, or humiliate FBI personnel; encouragement to identify and target FBI employees socially and online; and recurring demonization that frames the FBI as an existential threat. He has used a similarly intense and dehumanizing tone in posting about the FBI agent(s) and AUSA(s) involved in the instant matter, or those he perceives to have been involved in this matter. In the current

---

[7] On Sept. 18, 2026, Mr. Caputo filed a Bar Counsel complaint against the former AUSA, in which he acknowledged that he does not know whether the former AUSA signed the November 2025 legal process at issue in this matter. He nonetheless requested Bar Counsel to investigate whether the former AUSA "had any involvement in, knowledge of, or access to the investigation into me; whether he was influenced by information obtained through that investigation;" and whether the former AUSA "improperly or illegally obtained and used confidential federal criminal investigative information from his former section … and used that privileged material to make a pitch to his present client … and to charge fees to build the present civil case against me." The website lawfaredoj.com links directly to this Bar Counsel complaint.

environment, these hostile posts create a sentiment in which any of his approximately 90,000 followers on social media may feel justified in retaliating against specific agents or AUSAs.

As a result, revealing the name of the FBI case agent and AUSA who obtained the legal process here poses the risk of the following potential harms, among others: (1) **Personal Safety Risks.** Revealing FBI agent and AUSA names could expose them to targeted harassment, stalking, or threats from individuals who interpret Mr. Caputo's rhetoric as a call to action; his use of demonizing descriptions of FBI agents increases this concern. (2) **Online Harassment and Doxxing of Agents, AUSAs, and their Families.** Mr. Caputo's followers may attempt to locate personal information about any named FBI agent or DOJ employee, including home addresses, workplaces, or family members. Mr. Caputo has already described in a posted video interview where he believes a former AUSA lives, whom he mistakenly believes was involved in the underlying investigation here. Mr. Caputo has also encouraged social exclusion of FBI families, signaling to readers that harassment or shunning is appropriate. Mr. Caputo's instructions to his readers to avoid FBI personnel and their families suggest named agents and their families may face social hostility, disruption in community spaces, and resulting emotional distress. (3) **Operational Security Risks.** FBI agents could face challenges conducting future investigations safely. Public identification could expose them to hostility during enforcement actions or compromise sensitive roles and investigations. (4) **Escalation.** Naming FBI agents or AUSAs could intensify Mr. Caputo's online language or provoke followers to act aggressively.

***Applying the* Hubbard *factors, the names of the FBI case agent and AUSA should remain sealed.***

When determining whether to seal records or to keep portions of court records under seal, courts in this Circuit apply the six-factor balancing test established in *United States v. Hubbard*, 650 F.2d 293 (D. C. Cir. 1980). "The *Hubbard* test has consistently served as our lodestar for

evaluating motions to seal or unseal judicial records because it ensures that [courts] fully account for the various public and private interests at stake." *In re Leopold*, 964 F.3d 1121, 1127 (D.C. Cir. 2020) (citation and internal quotations omitted); *see also MetLife, Inc. v. Financial Stability Oversight Council*, 865 F.3d 661, 666 (D.C. Cir. 2017). The six *Hubbard* factors are: (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings. *In re Press Application for Access to Judicial Recs. in Case No. 23-SC-31*, 704 F. Supp. 3d 161, 169 (D.D.C. 2023) (citation omitted).

Applying those factors to the identities of the case agent and AUSA who obtained the legal process here on behalf of the FBI and the Department of Justice, it is clear that those names should remain sealed.

(1) **The need for public access to the documents at issue.** Petitioners have asserted that the identities of the FBI agent and AUSA "are directly relevant to the public's ability to understand and evaluate the judicial process at issue." [Doc. 14 at 4.] That is simply not true as a matter of logic or practice. When the four documents in this docket are unsealed with the redactions proposed by the Government, the public will have a great deal of knowledge about the nature of the investigation and the basis for the probable cause determination made by the Magistrate Judge in authorizing the search warrant and the basis for the nondisclosure order. Disclosing the names of the particular FBI agent and AUSA who happened to be assigned to this investigation would do nothing to add to the public's understanding of the investigation. Under the Justice Manual (JM), FBI case agents and line AUSAs do not have authority to seek search warrants in national security

matters without various levels of management approvals and consultations with the Department of Justice's National Security Division. *See, e.g.,* JM § 9-90.020. Disclosing the identities of the FBI agent and AUSA who submitted the legal process request here would do nothing more than make those individuals targets for those online and on the streets who seek to harass, intimidate, and threaten them.

(2) **The extent of previous public access to the documents.** There has been no previous public access to the names of the FBI agent or AUSA who submitted the legal process request in this case. The investigation was covert, no one was ever charged, and no public comment was made by an FBI or DOJ official about the investigation. As the FOIA case law cited above makes clear (at nn. 2, 3, and 4), the public typically does not have the right-of-access to this type of information.

(3) **The fact that someone has objected to disclosure, and the identity of that person.** The Government is the party objecting to disclosure for privacy and safety reasons, having consulted with both the FBI agent and AUSA at issue. In instances where disclosure would risk compromising the safety and privacy of law enforcement officers and line prosecutors, courts have consistently given substantial weight to the government's interest in shielding those individuals from harassment, targeting, or intimidation.

(4) **The strength of any property and privacy interests asserted.** As demonstrated by the cited FOIA case law, law enforcement agents and prosecutors maintain a strong privacy interest in protecting their identities. Beyond the personal privacy interests of the FBI agent and the AUSA, the FBI and the Department of Justice more broadly have an institutional interest in protecting those employees who carry out national security and criminal investigations. Public disclosure could expose these employees and their families to harassment, cause a hesitancy to

work on other sensitive investigations for fear of retaliation by subjects or their supporters, or subject them to online targeting. The substantial risk of personal and operational harm strongly favors nondisclosure.

(5) **The possibility of prejudice to those opposing disclosure.** The specific facts of Mr. Caputo's social media posts about FBI agents in general, and the FBI agents and prosecutors involved in this matter in particular (or those Mr. Caputo perceives to have been involved), heighten the safety concerns described above. Mr. Caputo has repeatedly used dehumanizing rhetoric to single out FBI employees and AUSAs, likening them to "demons" and calling them "evil," encouraged others to ostracize them, and publicly targeted a former AUSA whom he incorrectly asserts was involved in this investigation. The possibility of prejudice to the FBI agent and AUSA who submitted the legal process applications here, through harassment, intimidation, doxxing, and threats, as described above, is substantial.

(6) **The purposes for which the documents were introduced during the judicial proceedings.** The purpose of the underlying documents – applications for a search warrant and nondisclosure order and the resulting orders – was to further a covert criminal investigation that ultimately did not lead to criminal charges against any individual. The purpose of the names of the FBI agent and the AUSA was to affirm to the Court that the facts asserted in the government's applications were accurate. Their identities were not relevant to the Magistrate Judge's adjudication of any substantive issue. This factor weighs in favor of redaction because the names serve no purpose in advancing public understanding of the judicial process or the merits of any dispute before the Court.

**The Government has Properly Redacted Information to Protect the Identities of Uncharged Subjects, Cooperating Witnesses, and Other Third Parties**

In the Government's Response to Petitioners' Combined Motion to Intervene and Unseal Search Warrant Materials [Doc. 8], incorporated here in full, the Government explained that it was redacting information from the search warrant application to protect two well-recognized types of information: (1) information about subjects of the investigation and other third parties—including information that could identify them and their private activities;[8] and (2) information that describes any subjects' and/or witnesses' statements to law enforcement and which therefore would jeopardize the government's ability to obtain truthful information from subjects or witnesses in future investigations.[9] [*See* Doc. 8 at 4-5.]

"Petitioners do not dispute that particular names, identifying information, or genuinely private information concerning uncharged third parties may, in appropriate circumstances, remain under seal." [Doc. 14 at 2.] Petitioners claim that the Government has not narrowly tailored its redactions to accomplish these legitimate concerns. In particular, Petitioners object to the redaction of: "(1) factual information beyond what is needed to protect third-party privacy; (2) the names of companies owned or operated by Caputo; [and] (3) the names of individuals already publicly identified." [*Id.* at 1.]

As the Government has repeatedly stated in the parties' meet-and-confer sessions, it believes that it has redacted the minimal amount of language from the search warrant application to protect information about subjects of the investigation and other third parties—including

8 *See Citizens for Responsibility & Ethics in Wash. v. Dep't of Just.* ("*CREW*"), 854 F.3d 675, 682 (D.C. Cir. 2017)**;** *Matter of the Application of WP Co. LLC* ("*WP Co.*"), 201 F. Supp. 3d 109, 122 (D.D.C. 2016).

9 *See WP Co.*, 201 F. Supp. 3d at 127; *see also, e.g.*, *Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 219 (1979).

information that could identify them and their private activities; and information that describes any subjects' and/or witnesses' statements to law enforcement. This information is necessarily not limited to their names and/or other personal identifying information. It also includes contextual language about these individuals that would reveal their identities. At times, there may be otherwise publicly known information that, in context, would reveal the identity of the individual. At other times, it may be specific information gathered by the investigation. At all times, the redactions are narrowly tailored to protect the privacy of individuals who were never charged in this investigation and/or witnesses who cooperated with the FBI's investigation.

This dispute will need to be resolved by the Court conducting an *in camera* review of the Government's proposed redactions to the search warrant application. To assist the Court in its review, the Government is submitting, under seal and *ex parte*, a Supplemental Brief discussing its proposed redactions and how each of them supports the justifications provided publicly to the Court and Petitioners.

Wherefore, the Government requests the Court to adopt its proposed redactions and unseal the appropriately redacted documents.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

/s/ *Gregg A. Maisel*

Gregg A. Maisel
D.C. Bar No. 447902
Assistant United States Attorney
Chief, National Security Section
Deputy Chief, Criminal Division
601 D Street, NW
Washington, DC 20530
Phone: 202-252-7812
Gregg.Maisel@usdoj.gov

JOHN A. EISENBERG
Assistant Attorney General

/s/ *Tanner Kroeger*

Tanner Kroeger
New York Bar No. 5297015
Deputy Chief
Counterintelligence and Export Control Section
National Security Division
950 Pennsylvania Ave., N.W.
Washington, D.C. 20530
Phone: (202) 353-9488
Tanner.Kroeger@usdoj.gov m