**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH SIX ACCOUNTS STORED AT PREMISES CONTROLLED BY ONE PROVIDER PURSUANT TO 18 U.S.C. § 2703 FOR INVESTIGATION OF VIOLATIONS OF 18 U.S.C. § 951 | ) | Case No. 26-mc-00098-JEB |

**PETITIONERS' RESPONSE TO GOVERNMENT'S**
**BRIEF JUSTIFYING REMAINING REDACTIONS**

Petitioners Michael Caputo and Judicial Watch, Inc. respectfully submit this response to the Government's Brief Justifying Remaining Redactions.

1. The Government does not dispute that the investigation is closed or that the public has both a common-law and First Amendment right of access to the search warrant application. ECF No. 8 at 1–2. The parties also agree that limited information concerning uncharged third parties and cooperating witnesses may remain under seal. The remaining questions are whether the Government's redactions are narrowly tailored to protect those interests and whether the name of the Assistant United States Attorney who obtained the search warrant should remain sealed.[1]

2. The Government's brief fails to justify its remaining redactions. It relies on general assertions of third-party privacy and law enforcement interests, devotes most of its argument to the perceived risks of disclosing the names of the FBI agent and AUSA, and does not explain why narrower redactions would fail to protect legitimate interests. Its proposed

[1] Petitioners no longer object to the redaction of the FBI agent's name.

redactions do not satisfy the First Amendment, and the redaction of the AUSA's name fails under the common law as well.

3. The Government has acknowledged that "under the applicable law in this matter, the public has a First Amendment right-of-access to the Application." ECF No. 8 at 2. Yet it relies exclusively on the common-law test established in *United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980), and reaffirmed in *In re Leopold*, 964 F.3d 1121 (D.C. Cir. 2020),[2] and never addresses the more demanding First Amendment standard.

4. Courts in this District have recognized that the First Amendment right of access attaches to search warrant materials once an investigation has concluded. *In re Application of New York Times Co.*, 585 F. Supp. 2d 83, 90–94 (D.D.C. 2008) (ordering warrant materials unsealed with redactions limited to protecting confidential informants). The Government may overcome this right only by demonstrating that "closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enterprise Co. v. Superior Court of Cal.*, 478 U.S. 1, 13–14 (1986) (*Press-Enterprise II*) (citation omitted). In this Circuit, that requires the Government to establish that (1) closure serves a compelling interest; (2) there is a substantial probability that, absent closure, that interest would be harmed; and (3) no alternative to closure would adequately protect that interest. *Washington Post v. Robinson*, 935 F.2d 282, 290 (D.C. Cir. 1991). The interest must be "articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered." *Press-Enterprise Co. v. Superior Court of Cal.*, 464 U.S. 501, 510 (1984) (*Press-Enterprise I*).

---

[2] *Leopold* expressly did not address unsealing under the First Amendment. 964 F.3d at 1126–27.

5. Here, the Government acknowledges that the investigation is closed and that no charges were brought. ECF No. 8 at 1–2; ECF No. 16 at 9–10. The warrant authorized a search of Caputo's entire online private life, and the public has a substantial interest in understanding the factual basis on which the Government sought—and the Court granted—that authorization. The Government's generalized assertions of privacy and law enforcement interests do not relieve it of its burden to justify each disputed redaction.

6. The Government devotes two pages of its brief to the substantive redactions, reiterating that they protect uncharged subjects, cooperating witnesses, and other third parties. ECF No. 16 at 11–12. Petitioners have never disputed that such individuals may have legitimate privacy interests. *See* ECF No. 14 at 2. The question is whether the Government has redacted more than necessary to protect them.

7. The Government argues that it must sometimes withhold context because disclosure could reveal an individual's identity. ECF No. 16 at 12. But that some context may reveal an identity does not mean that all factual information concerning an individual must remain sealed. The Government must establish that the particular information withheld would reveal protected information and that a narrower redaction would not suffice. Otherwise, the Government could conceal the factual basis for a search warrant whenever that basis involves the statements or activities of third parties.

8. Indeed, some of the remaining redactions encompass substantial factual passages and even conjunctions and punctuation. ECF No. 14 at 3. The breadth of those redactions raises substantial questions about whether they are narrowly tailored.

9. The Government also fails to meaningfully address the continued redaction of companies owned or operated by Caputo. As the Government has acknowledged, Caputo has

effectively waived his own privacy and reputational interests by seeking disclosure of the warrant materials. ECF No. 8 at 3. The Government therefore cannot rely on those interests to withhold the identities of his companies. If disclosing a company's name would reveal protected information about an uncharged third party, the Government must identify that interest and demonstrate why the particular redaction is necessary.

10. Petitioners also continue to object to the redaction of information concerning individuals whose identities and connections to these matters have already been publicly disclosed. Prior disclosure bears directly on the strength of the asserted privacy interest and the harm that further disclosure would cause. *See In re Application of Los Angeles Times Communications LLC*, 28 F.4th 292, 297–98 (D.C. Cir. 2022). The Government cannot assume that disclosing previously public information would cause the same harm as disclosing genuinely private information.

11. An AUSA is an officer of the Court who appears on behalf of the United States and is responsible for the representations made to the Court. The public has a substantial interest in knowing which government attorney invoked the Court's authority to search Caputo's entire online private life.

12. The Government cites numerous decisions recognizing the privacy interests of federal law enforcement personnel. Nearly all arise under the Freedom of Information Act and involve the withholding of employees' names from agency records. They do not address the public's right of access to the identity of an attorney who applied for judicial authorization. Nor does the Government identify any case permitting redaction of an AUSA's name from a warrant application because the subject criticized federal law enforcement. Indeed, the Government's own authorities recognize a distinction for public-facing employees. *See* ECF No. 16 at 3 n.3

(describing *Reps. Comm. for Freedom of the Press v. CBP*, 567 F. Supp. 3d 97, 125 (D.D.C. 2021), as upholding the withholding of names of "non-public facing employees" where the agency had disclosed the names of senior leadership). An AUSA who appears before a court to seek a search warrant is, by definition, public-facing—not simply an employee whose name happens to appear in an investigative file.

13. The Government argues that the AUSA's identity adds nothing to public understanding because national security investigations require approval from senior officials. ECF No. 16 at 8–9. But internal approvals do not diminish the responsibility of the attorney who actually submits the application to the Court. And the Government itself describes the function of the names in its applications: "to affirm to the Court that the facts asserted in the government's applications were accurate." *Id.* at 10. That is precisely why the AUSA's identity matters. The name on the application is how a particular officer of the Court takes responsibility for the representations on which the Court relied.

14. The names of AUSAs also regularly appear in publicly available search warrant materials, including materials concerning sensitive and highly publicized investigations. For example, the materials unsealed in connection with the search of Mike Lindell identified the names of the AUSAs in the government's accompanying submission, while protecting the names of FBI agents—the same line Petitioners draw here. *See In re Search of a Person Located in the District of Minnesota*, No. 22-mj-742 (TNL) (D. Minn.), ECF No. 38. The same line (unsealing the AUSAs' names while protecting the FBI agents' names) was also drawn with respect to the application for the 2021 search of Victoria Toensing's home, unsealed on October 20, 2026. *United States v. 5807 Hillburne Way, Chevy Chase, MD 20815 ("Subject Premises-1")*, No. 21-

mj-01202-GLS (D. Md.), ECF No. 28. Identifying the government attorneys responsible for judicial submissions is an ordinary feature of federal judicial proceedings.[3]

15. The Government's principal justification for concealing the AUSA's name is Caputo's social media posts. But the Government acknowledges that none of those posts explicitly threatened FBI agents or AUSAs. ECF No. 16 at 6. Nor does it identify any instance in which Caputo called for violence against an FBI agent or prosecutor, or any act of violence resulting from his posts. The Government also points to Caputo's statements about a former AUSA, including where that person lives. ECF No. 16 at 5–6. But by the Government's own account, that former AUSA did not obtain this warrant—confusion that continued sealing invites and disclosure would end. And Petitioners seek only the AUSA's name, not any personal information, which federal law already prohibits publishing with intent to threaten or intimidate. 18 U.S.C. § 119. That record does not establish a substantial probability of harm. *See Robinson*, 935 F.2d at 290.

16. Continued sealing would also produce an anomalous result. Had the Government charged Caputo, the prosecutors responsible for the case would have been identified on the public docket as a matter of course, and Caputo could have challenged the warrant application in open court—notwithstanding his criticism of federal law enforcement. The safety concerns the Government now raises would have been at least as acute in a prosecution, yet prosecutors in high-profile and politically charged cases are routinely identified. The Government offers no

3 One court has approved redacting an AUSA's identity from search warrant materials. *In re Sealed Search Warrant*, No. 22-mj-8332-BER, ECF No. 80 at 3 (S.D. Fla. Aug. 22, 2022). But that investigation remained ongoing, the court documented threats and harassment directed at federal law enforcement personnel following the search, *id.* at 7–9, and no intervenor—including Judicial Watch—objected to the redaction, *id.* at 3. Here, by contrast, the investigation is closed, the Government acknowledges that none of Caputo's posts explicitly threatened FBI agents or AUSAs, ECF No. 16 at 6, and Petitioners contest the redaction.

reason why its decision not to bring charges should entitle it to greater secrecy than a prosecution would have allowed. The protection courts extend to uncharged individuals shields those who were investigated but never had the opportunity to clear their names. *See Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 219 (1979). It does not extend to the government attorneys who investigated them, and here the uncharged individual is the one seeking disclosure.

17. Taken to its logical end, the Government's position would permit the identity of any attorney appearing on behalf of the United States to be concealed whenever the subject of an investigation has been outspoken in criticizing the Government. Caputo's criticism of the FBI and the Department of Justice, however harsh, is protected speech. *See NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 909–10, 926–29 (1982) (First Amendment protects forceful and even offensive advocacy, including calls for social ostracism). The public's right of access to judicial records—a right Judicial Watch asserts here alongside Caputo—does not turn on whether the Government approves of the views expressed by the person seeking disclosure. Having acknowledged that the First Amendment right of access applies, the Government must meet the standard for overcoming it. It has not done so with respect to the AUSA's name.

18. Even under the common-law framework on which the Government relies, the AUSA's name should be unsealed. The *Hubbard* factors are (1) the need for public access; (2) the extent of previous public access; (3) the fact that someone has objected and the identity of that person; (4) the strength of the property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced. *In re Press Application for Access to Judicial Records in Case No. 23-SC-31*, 704 F. Supp. 3d 161, 169 (D.D.C. 2023).

19. The first and sixth factors favor disclosure because the AUSA's name identifies the officer who vouched for the representations on which the Court authorized the search. *See supra* ¶ 13. The second and third factors do not support sealing either. Although the names have not previously been public, ECF No. 16 at 9, the names of government attorneys who appear before the courts ordinarily are, as the Government's own filings in this matter show. *See* ECF Nos. 8, 16. And the objection here comes from the Government on behalf of its own attorney, concerning that attorney's official conduct, not from an uninvolved third party whose private information happens to appear in the record. Finally, the fourth and fifth factors do not outweigh the public interest. An AUSA has a diminished privacy interest in the official act of appearing before a court, *see supra* ¶ 12, and the asserted prejudice rests on speculation about how unidentified followers might react, not on any threat, *see supra* ¶ 15. On balance, the *Hubbard* factors favor disclosure of the AUSA's name.

* * *

For these reasons, Petitioners respectfully request that the Court reject the Government's proposed redactions to the extent they are not justified under the First Amendment and the common law, order disclosure of all segregable information, and order the AUSA's name unsealed.

Dated: October 21, 2026

Respectfully submitted,

/s/ Michael Bekesha
Michael Bekesha (D.C. Bar No. 995749)
Sean O'Donnell (D.C. Bar No. 90040392)
JUDICIAL WATCH, INC.
425 Third Street S.W., Suite 800
Washington, DC 20024
Tel: (202) 646-5172
Email: mbekesha@JudicialWatch.org

*Counsel for Petitioners*